IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DANIEL SEMOTUK, <br> on behalf of himself individually and <br> all other similarly situated employees, <br><br> Plaintiffs, <br><br> vs. <br><br> AIRTEX MANUFACTURING, LLLP <br> d/b/a ENGINEERED AIR <br> Serve: Resident Agent <br>       C T Corporation System <br>       112 SW 7th St., Suite 3C <br>       Topeka, KS 66603 <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Plaintiff Daniel Semotuk ("Semotuk" or "Named Plaintiff"), individually and on behalf of other similarly situated individuals, for his Complaint against Defendant Airtex Manufacturing, LLLP d/b/a Engineered Air ("Engineered Air" or "Defendant"), state as follows:

### INTRODUCTION

1. Through its officers, agents, and employees, Defendant implements and enforces payroll policies and practices. In many respects, those payroll policies are unlawful.

2. Defendant violates the Fair Labor Standards Act ("FLSA") and the Kansas Wage Payment Act ("KWPA") by utilizing a time-rounding policy that, in the aggregate, undercounts hourly employees' worked time, and by automatically deducting a 30-minute meal period from employee pay when no such break has been taken or provided.

1

3. Semotuk brings this collective and class action individually and on behalf of other similarly situated employees of Defendant to recover unpaid wages and damages owed under the FLSA, the KWPA, and Kansas common law.

## PARTIES, JURISDICTION, AND VENUE

4. Plaintiff Daniel Semotuk is an individual residing in Overland Park, Kansas. He worked for Engineered Air, from approximately April 17, 2024, to December 3, 2024.

5. Defendant is a Delaware limited liability partnership that is registered to do business in the state of Kansas. Defendant owns, operates, and manages the business known as Engineered Air in De Soto, Kansas. Defendant can be served through its registered agent, C T Corporation System, 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603.

6. Plaintiff's collective claim is brought pursuant to the FLSA (29 U.S.C. § 201, *et seq.*), and its implementing regulations, such as those at 29 C.F.R. § 778.211.

7. Plaintiff's class claims are brought pursuant to the Kansas Wage Payment Act (K.S.A. 44-313 *et seq.*) and Kansas common law.

8. The Court has jurisdiction over Plaintiff's collective claim under 29 U.S.C. § 216 and 28 U.S.C. § 1331.

9. The Court has supplemental jurisdiction over Plaintiff's class claims under the Kansas Wage Payment Act and Kansas common law pursuant to 28 U.S.C. § 1367.

10. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the claims herein occurred in the District of Kansas.

## FACTUAL BACKGROUND

11. Plaintiff and the putative collective and class members were hourly, non-exempt, employees of the Defendant, and each of them had a scheduled time to start and end their shift.

12. Semotuk was typically scheduled to start his workdays/shifts at 6:55 a.m., and he was typically scheduled to end his workdays/shifts at 3:25 p.m.

13. Defendant's other hourly, non-exempt employees, all have a scheduled time to start their workdays or shifts.

14. Defendant's payroll policies and practices permitted hourly, non-exempt employees to clock in up to three (3) minutes before their respective shifts started.

15. In calculating the amount of time "worked" by Plaintiff—or any of Defendant's other hourly, non-exempt employees—Defendant utilized a methodology of counting time known as "rounding."

16. Under the rounding regime, Defendant purported to round up hourly, non-exempt employees' time from whenever the employee clocked in or out to the nearest 6th minute.

17. The same was true for all of Defendant's other hourly, non-exempt employees; Defendant did not pay them for the time between when they would clock in and the start of their respective shifts, even though the employees were on-the-clock and working during this time.

18. Defendant encouraged Plaintiff and its other hourly, non-exempt employees to arrive for work before their shift started, clock in, and begin work immediately to transition to the next shift.

19. Semotuk clocked in and out for his shifts by using his assigned badge at a punch clock to track the exact time he clocked in. Semotuk witnessed his fellow hourly, non-exempt co-workers utilize the exact same clock in and clock out system and procedures that he used during his employment with Defendant.

20. Although Defendant purported to round employees' time to the nearest 6th minute at the end of a workday or shift, in practice, Defendant did not round up its hourly, non-exempt employees' time.

21. Rather, at the end of a workday or shift, Defendant unlawfully rounded <u>down</u> its hourly, non-exempt employees' time to the specific time that an employee's shift was scheduled to end, even when the employee clocked out <u>after</u> the technical shift had ended.

22. At the end of these shifts, Defendant does not permit its hourly, non-exempt employees to clock out <u>before</u> their shifts end (even though it would let them clock in early at the beginning of their shifts).

23. Rather, Defendant required Semotuk and its other hourly, non-exempt employees, to wait until their shift technically ended—3:25 p.m. in Defendant's case—before permitting them to clock out.

24. Defendant's employee handbook permitted a "three-minute grace period" for employees to clock-in. The policy states that if "an employee punches in later than the three (3) minute grace period, he/she will be docked for the amount of time missed."

25. When Semotuk and his fellow hourly, non-exempt employees clocked out—typically between 3:31 p.m. and 3:35 p.m.—Defendant would not round <u>up</u> the employees' time, but rather, round the time <u>down</u> to 3:25 p.m.

26. Defendant's rounding policy and "three-minute grace period" policy in conjunction led to a rounding scheme that, in the aggregate, unlawfully undercounted Semotuk's time worked.

27. The same was and is true for Defendant's other hourly, non-exempt, current and former employees.

28. Defendant's policies has resulted in a failure to pay Named Plaintiff, and all similarly situated employees in accordance with the FLSA and the KWPA.

### *Lunch Periods*

29. Additionally, Defendant automatically deducted a 30-minute meal period/break from each hourly, non-exempt employees' time each day, even if the employees at issue did not take a meal period/break of that duration, and even if the employees were not actually freed from duty during the meal period/break.

30. Semotuk and his fellow hourly, non-exempt plant coworkers were afforded an opportunity for a meal period or break that began at approximately 11:30 a.m. and that ended sometime less than 30 minutes, and that Semotuk approximates to average 24 minutes per meal period.

31. Defendant would not permit its hourly employees to take a meal period break before 11:30 a.m., and Semotuk frequently did not take a full, 30-minute meal period.

32. At approximately 11:30 a.m., Defendant would ring a bell, which would signal that Semotuk and his fellow hourly, non-exempt plant employees' meal period had begun.

33. Due to the nature of their positions, Semotuk and his fellow hourly, non-exempt plant coworkers often had to continue working on tasks after the bell rang, until they could safely come to a stopping point and begin their break.

34. At approximately 11:55 a.m. Defendant would ring a bell, which would signal that Semotuk and his fellow hourly, non-exempt plant coworker's meal period had ended. At that time, Semotuk often had already begun working.

35. Regardless of how much time they were actually clocked out for a meal period—whether it was 14 minutes or 24 minutes or 28 minutes—Semotuk's paychecks would nonetheless reflect a 30-minute deduction from his worked time.

36. Semotuk frequently did not take a full 30-minute meal break during his shifts.

37. Semotuk observed that his hourly, non-exempt coworkers took breaks similar to him, such that those coworkers also frequently did not take a full 30-minute meal break during their shifts.

38. On information and belief, Defendant's other hourly, non-exempt plant employees are subject to the same meal break policy and automatic 30-minute deductions from their time as Semotuk.

39. Further, Defendant failed to track the hours that hourly, non-exempt plant employees, such as Semotuk, worked during their meal periods, despite the FLSA's mandate that they do so.[1]

40. Semotuk routinely showed up for work, clocked in for his shift at 6:50 a.m., began working right away, worked through his shift until his meal period that rarely, if ever, lasted a full thirty minutes, and then finished his shift, clocking out at 3:30 p.m. or 3:35 p.m. each shift.

41. Though he was at work for approximately 8 hours and 45 minutes each shift, Defendant only paid Semotuk for 8 hours of work each shift.

42. Semotuk witnessed his hourly, non-exempt plant coworkers follow the same practice of remaining at their workstations until at least 11:30 a.m. to help with the transition to the next shift.

---

[1] *See* 29 CFR § 516.2(a)

43.  Similar to his lunch break, Semotuk and his coworkers often had to continue working on tasks after 3:25 p.m. until they could safely come to a stopping point.

44.  Despite this, Semotuk and his coworkers were uncompensated for the time spent working after 3:25 p.m.

45.  From every indication that Semotuk received from working with, talking to, and observing his co-workers, and on information and belief, Defendant's other hourly, non-exempt employees were subject to the same clock-in, clock-out, rounding procedures, and meal period procedures as the Plaintiff.

### *The Collective and Class*

46.  Plaintiff brings Count I as an opt-in collective action pursuant to 29 U.S.C. § 216(b) and seek relief, individually and on a collective basis, from Defendant: (a) illegal rounding policies that require work with no pay; and (b) unlawful practice of automatically deducting a 30-minute meal period from its employees' worked time each day without regard to whether the employee took a full meal period.

47.  For Count I, the collective is defined as:

> All persons working as hourly, non-exempt plant employees of Engineered Air from June 30, 2022, through the present.

48.  Plaintiff brings state law claims in Count II (violation of the KWPA) and Count III (breach of contract), as a class action pursuant to Fed. R. Civ. P. 23 (Rule 23), seeking relief on his own behalf and as the class representatives on behalf of the following:

> All persons working as hourly, non-exempt plant employees for Engineered Air from June 30, 2022, through the present.

49. Plaintiff brings Count IV (unjust enrichment/quantum meruit), in the alternative to Counts I-III, as a class action pursuant to Fed. R. Civ. P. 23 (Rule 23), seeking relief on his own behalf and as the class representatives on behalf of the following:

> All persons working as hourly, non-exempt plant employees of Engineered Air from June 30, 2022, through the present.

50. The collective and class at issue is believed to number in the hundreds of persons, and as a result, joinder of all class members in a single action is impracticable. Additionally, class members may be informed of the pendency of this class action through electronic and/or direct mail.

51. There are questions of fact and law common to the class that, under federal law, predominate over any questions affecting only individual members, including but not limited to, the following:

   a. Whether Defendant violated federal or Kansas law when they failed to pay its hourly, non-exempt employees for all of the hours they worked;

   b. Whether Defendant had a policy and practice of failing to compensate its hourly, non-exempt employees for all of the hours they worked;

   c. Whether Defendant violated federal law or Kansas law by rounding up its employees' time at the start of a workday and then not similarly rounding up its employees' time to the next increment at the end of a workday;

   d. Whether Defendant violated federal law or Kansas law by automatically deducting a thirty-minute meal period from its employees' time each workday regardless of whether the employee took a full bona fide meal period break;

   e. Whether Defendant failed to pay its hourly, non-exempt employees at an effective wage rate of at least the applicable minimum wage for all hours worked;

   f. Whether Defendant failed to pay its hourly, non-exempt employees an overtime premium on wages, bonuses, and shift differential pay for work performed in excess of 40 hours in a workweek;

   g. Whether Defendant failed to comply with the FLSA's mandate to track all hourly non-exempt employees time worked;

      h.      Whether Defendant breached its contracts with its hourly, non-exempt employees by not paying said employees per the terms of their contracts with the employees; and

      i.      Whether Defendant retained a benefit from such unlawful compensation policies and practices.

52. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity, to other available methods for the fair and efficient adjudication of the state law claims.

53. The Named Plaintiff's claims under federal and state law are typical of those of the class in that the class members have been employed in the same or similar positions as the Named Plaintiff and were subject to the same or similar unlawful practices as the Named Plaintiff.

54. A collective/class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendant has acted on grounds generally applicable to the collective/class, and the presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of the members to protect their interests.

55. The Named Plaintiff is an adequate representative of the collective because he is a member of the class, and his interests do not conflict with the interests of the members of the class he seeks to represent. The interests of the members of the class will be fairly and adequately protected by the Named Plaintiff and undersigned counsel. Counsel are experienced in the litigation of civil matters, including the prosecution of complex wage and hour, employment, and class action cases.

56. Maintenance of this action as a collective action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the collective who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single collective action can determine, with judicial economy, the rights of the collective's members.

## COUNT I – VIOLATION OF THE FLSA
### (BROUGHT AGAINST DEFENDANT BY PLAINTIFF, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED)

57. Named Plaintiff Daniel Semotuk incorporates the allegations set forth above as if fully set forth herein.

58. Defendant Airtex Manufacturing LLLP, is an "employer," as defined by the FLSA.

59. At all times material herein, Named Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

60. The FLSA regulates, among other things, the payment of wages and overtime pay, by employers engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

61. Defendant is subject to the minimum wage and overtime pay requirements of the FLSA because its enterprise is engaged in commerce and its employees are engaged in such commerce.

62. Defendant has violated the FLSA by failing to properly compensate its hourly, non-exempt employees for all of their hours worked, by failing to pay them minimum wage, and by failing to properly pay them overtime wages.

63. The Named Plaintiff and all other similarly situated employees—which the Named Plaintiff considers to be all persons working as hourly, non-exempt plant employees for Defendant from June 30, 2022, through the present—are victims of a common compensation policy.

64. The Named Plaintiff and all other similarly situated employees are entitled to damages equal to the amount of uncompensated time that they worked for Engineered Air, as well as the mandated minimum wage and overtime premium pay, within the three years preceding the filing of the Complaint, plus periods of equitable tolling, because Defendant has acted willfully and knew or showed reckless disregard in its violation of the FLSA's requirements.

65. Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA. As a result, the Named Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant acted in good faith in failing to pay its employees minimum wage and overtime compensation, the Named Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

66. As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld by Defendant from the Named Plaintiff and all similarly situated employees.

67. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendant are liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, expenses, and costs of this action.

WHEREFORE, for Plaintiff's collective claims set forth in Count I, the Named Plaintiff and all other similarly situated employees demand judgment against Defendant and request that this Court:

(a) issue notice to all similarly situated employees (current or former) of Engineered Air informing them of their right to file consents to join the FLSA portion of this action;

(b) declare Defendant's rounding policies, automatic meal period deduction policies, and improper overtime payroll policies illegal under the FLSA;

(c) award Plaintiff and all other similarly situated employees their lost wages, minimum wages, overtime wages, and liquidated damages under 29 U.S.C. § 216(b);

(d) award Plaintiff and all other similarly situated employees pre-judgment and post-judgment interest as provided by law;

(e) award Plaintiff and all other similarly situated employees attorneys' fees, expenses, and costs, as allowed by Section 216(b) of the FLSA; and

(f) award Plaintiff and all other similarly situated employees such other relief as the Court deems just and proper in the circumstances.

### COUNT II – VIOLATION OF THE KANSAS WAGE PAYMENT ACT
### (BROUGHT AGAINST DEFENDANT BY PLAINTIFF, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED)

68. Named Plaintiff Daniel Semotuk incorporates the allegations set forth above as if fully set forth herein.

69. Defendant Airtex Manufacturing LLLP is an "employer" as defined in K.S.A. 44-313.

70. The Kansas Wage Payment Act (the "KWPA") mandates that all employers shall pay all wages due to their employees.

71. The KWPA defines wages as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis." K.S.A. 44-313(c).

72. Defendant compensated Plaintiff and all other similarly situated employees on a "time" or "hourly" basis.

73. Despite agreeing to pay the Plaintiff on an hourly basis, Defendant has failed to properly count all of the time that the employees worked.

74. As noted above, Defendant does not track all of the time that its hourly employees work, accordingly Defendant does not pay the employees for all of their time worked.

75. Additionally, as noted above, Defendant automatically takes away thirty (30) minutes per day of time from its hourly employees for a meal period or lunch break, even though in the vast majority of instances, the hourly employee does not receive a full thirty-minute break and instead are working during some or all of that time.

76. The Named Plaintiff, and all those similarly situated—which the Named Plaintiff considers to be all persons working as hourly, non-exempt plant employees for Defendant from June 30, 2022, through the present—agreed to work these shifts based on this compensation plan, that they would be paid their regular hourly rate.

77. Defendant has willfully failed to pay these wages, and are therefore liable to the Named Plaintiff, and all those similarly situated, for their wages due, and any penalties under the KWPA.

## COUNT III – BREACH OF CONTRACT
## (BROUGHT AGAINST DEFENDANT BY PLAINTIFF, INDIVIDUALLY, AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED)

78. Named Plaintiff Daniel Semotuk incorporates the allegations set forth above as if fully set forth herein.

79. Defendant entered into employment contracts with Plaintiff and its other hourly, non-exempt plant employees.

80. Defendant agreed to pay Plaintiff and its other hourly non-exempt plant employees an hourly wage for all hours worked, in accordance with Kansas and Federal law.

81. Upon information and belief, both Defendant on the one hand, as well as Defendant's hourly non-exempt plant employees on the other hand, intended these employment relationships to be at-will.

82. Plaintiff and other hourly, non-exempt employees of Defendant fully performed their obligations under these contracts.

83. However, Defendant failed to pay Plaintiff and its other hourly non-exempt plant employees for all of their hours worked.

84. Defendant is in breach of its employment contracts with Plaintiff and its other hourly non-exempt plant employees and they have been damaged as a result of Defendant's breach of contract in an amount to be proven at trial.

WHEREFORE, for Plaintiff class claims set forth in Counts II–III, the Named Plaintiff and all other similarly situated employees demand judgment against Defendant and request that this Court:

(a) certify the state law class set forth in Count II–III as a class action pursuant to Fed. R. Civ. P. 23;

(b) declare Defendant's rounding policies, automatic lunch deduction, and other improper policies illegal under the KWPA;

(c) award Plaintiff and all other similarly situated employees damages, including their lost wages, liquidated damages, and penalties under K.S.A. 44-315;

(d) award Plaintiff and all other similarly situated employees pre-judgment and post-judgment interest as provided by law;

(e) award Plaintiff and all other similarly situated employees such other relief the Court deems just and proper in the circumstances.

## COUNT IV – UNJUST ENRICHMENT/QUANTUM MERUIT
### (BROUGHT AGAINST DEFENDANT BY PLAINTIFF, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED)

85. Named Plaintiff Daniel Semotuk incorporates the allegations set forth above as if fully set forth herein.

86. Plaintiff brings this claim in the alternative to Counts I, II, and III.

87. Defendant has been and continues to be enriched at the expense of Plaintiff and other similar situated employees by making deficient payments for work performed by Plaintiff and other similarly situated employees, causing them to not be properly compensated for their work.

88. Plaintiff and other similarly situated employees conferred benefits in the form of hours worked on behalf of Defendant, who knew of and retained the benefits in the form of the financial success of Defendant.

89. Plaintiff and other similarly situated employees provided these services based on the expectation that they would be compensated fairly and lawfully.

90. Defendant failed to compensate Plaintiff and other similarly situated employees for their work performed in a fair or lawful way.

91. Due to its failure to pay Plaintiff and other similarly situated employees fairly or lawfully, Defendant has unjustly retained pay.

WHEREFORE, for Plaintiff's class claim set forth in Count IV, the Named Plaintiff and all other similarly situated employees demand judgment against Defendant and request that this Court:

(a) certify the state law class set forth in Count IV as a class action pursuant to Fed. R. Civ. P. 23;

(b) declare that Defendant has been unjustly enriched by its rounding policies, automatic lunch deduction, and other improper wage payment policies described above; and

(c) award Plaintiff and all other similarly situated employees restitution in an amount to be proven at trial, as well as any other relief the Court deems just and proper in the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for the foregoing causes of action.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby requests the trial be held in Kansas City, Kansas.

          Respectfully submitted,

          **HKM EMPLOYMENT ATTORNEYS LLP**

By:    */s/ Ethan A. Crockett*
          Brad K. Thoenen, KS 24479
          bthoenen@hkm.com
          Ethan A. Crockett, KS 79069
          ecrockett@hkm.com
          John J. Ziegelmeyer III, KS 23003
          jziegelmeyer@hkm.com
          Kevin A. Todd, KS 78998
          ktodd@hkm.com
          1600 Genessee Street, Suite 754
          Kansas City, Missouri 64102
          816.875.9339

          ATTORNEYS FOR PLAINTIFF